UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| James B. Stover, | Civil No. 12-2910 (JNE/FLN) |
| Plaintiff, | |
| v. | |
| Carolyn W. Colvin,<br>Acting Commissioner of Social Security, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

Carol L. Lewis for Plaintiff.
Ana H. Voss, Assistant United States Attorney, for Defendant.

___

Plaintiff James Stover seeks judicial review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits.[1] ECF No. 1. Stover makes two primary arguments in support of remand: (1) that the ALJ erred in not finding his impairments equivalent to the listing criteria for inflammatory arthritis and (2) that the ALJ did not fully develop the record. The matter was referred to the undersigned United States Magistrate Judge for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1 and this Court has jurisdiction over the claim pursuant to 42 U.S.C. § 405(g). The parties have submitted cross Motions for Summary Judgment. ECF Nos. 11 and 14. For the reasons that follow, this Court recommends that the Commissioner's motion be **GRANTED** and Stover's motion be

___

[1] Stover's initial complaint asks this Court for a reversal or a remand. Stover's subsequent Motion for Summary Judgment, however, asks only for a remand. (ECF Nos. 1, 11).

**DENIED**.

## I. INTRODUCTION

Stover filed an application for disability benefits and supplemental security income in November of 2007, alleging a disability onset date of September 1, 2006. Administrative Record (AR) 11, ECF No. 9-2. His applications were denied initially in May 2008 and on reconsideration in July 2008. AR 89. Stover then requested a hearing before an Administrative Law Judge, which was held in June 2009. AR 118, 33. On September 28, 2009, ALJ Ralph L. Wampler issued a decision denying Stover's applications for benefits.[2] AR 98. Several days prior to the issuance of that decision, Stover filed subsequent claims for benefits, both of which were denied initially in March 2010 and on reconsideration in June 2010. AR 169, 174, 178 and 181. Stover appealed ALJ Wampler's decision. In August 2010, the Appeals Council for the Social Security Administration remanded the case for further review. AR 104. The Appeals Council ordered that the reviewing ALJ issue a new decision on all of Stover's claims. AR 106. ALJ Larry Meuwissen heard Stover's combined claims in March 2011. ALJ Meuwissen denied Stover benefits in July 2011. AR 23-24. In October 2011, Stover again appealed the ALJ decision. AR 4. The Appeals Council denied review in October 2012. AR 1.

## II. STATEMENT OF FACTS

Stover is a forty-one year old single male who has one son. AR 35, 530. He has a general equivalency diploma (GED) and completed two years of junior college. He previously worked in fast food and temporary labor. AR 36, 28. He claims to be disabled due to chronic back pain, bilateral hand deformity due to webbed fingers, generalized anxiety disorder, major depressive

---

[2] Plaintiff and Defendant incorrectly refer to ALJ Wampler as "Wempler." AR 9-2, 33; (ECF Nos. 13, 15).

disorder versus bipolar disorder, attention deficit hyperactivity disorder, posttraumatic stress disorder, and personality disorder. AR 13.

### A. Medical Evidence

#### 1. A.C. Husen, Doctor of Osteopathic Medicine.

At the request of the Social Security Administration, Stover saw Dr. Alfred Husen in April 2008. AR 529. Dr. Husen's report states that Stover came to him with complaints of back pain, depression and anxiety. AR 529. Stover told Dr. Husen that he had previously experienced two severe episodes of back pain, each paralyzing Stover from movement for five-to-ten minutes. *Id.* Stover complained of joint pain in general, citing the humid Oklahoma weather as a contributing factor. *Id.* He also complained of left knee pain resulting from a car accident and difficulty with his hands and feet as a result of being born with web fingers and toes. *Id.*[3] Lastly, Stover complained of depression as a result of not being able to see his son. AR 529. At the time, Stover was taking Prozac and Ibuprofen for his depression and pain. *Id.* Stover reported drinking and smoking regularly. AR 530.

Dr. Husen conducted a Range of Joint Motion Evaluation and Functional Evaluation Assessment. AR 532, 534. Dr. Husen concluded that Stover's finger to thumb opposition is within normal limits on both hands, that he can manipulate small objects with "some difficulty," and that he can effectively grasp tools with "minimal difficulty." AR 534.

#### 2. Kara Rodgers, Licensed Psychologist.

Stover also saw Dr. Kara Rodgers in April 2008 for a psychological consultation. AR

---

[3] Dr. Husen's examination report notes that Stover had the skin from his web fingers surgically removed when he was eight years old, but that he does have some deformity and difficulty with mobility of his fingers. AR 529, 530. The end portions of Stover's three middle toes on his left foot are partially webbed. *Id.*

536. Dr. Rodgers reported that Stover's hygiene and grooming were average, and that he maintained good eye contact, was cooperative with the examination and did not appear to have difficulty moving. AR 536. Stover reported to Dr. Rodgers that he feels "empty" as a result of not being able to see his son, experiences lengthy episodes of depression, and sometimes has suicidal thoughts. *Id*. He reported feeling unmotivated and hopeless. *Id*. He noted that he experienced anxiety around groups of people because he fears being harmed by others. *Id*. Stover stated that he was physically and sexually abused as a teenager. *Id*. He also reported being arrested ten-to-twelve times, mostly for not paying traffic violation fines, though he spent nine months in jail for an attempt of grand larceny with a dangerous weapon. AR 537. Stover reported that his depression, anxiety and other pains are the cause of his inability to maintain employment. *Id*.

Dr. Rodgers concluded that Stover has adequate psychological functioning, with moderate major depressive and anxiety disorder. AR 537.[4] Dr. Rodgers also concluded that Stover has average intellectual functioning and working memory and is able to execute good social judgment, identify common objects, follow three-stage commands and abstractly reason. AR 536, 537.

### 3. Lee Kirsch, Doctor of Osteopathic Medicine.

In early 2010, Stover saw Dr. Lee Kirsch for another physical examination. AR 623. Stover complained of decreased strength and function of his deformed hands and left hip and knee pain. AR 623. Stover reported that temporary labor became more difficult over the past couple of years due to moderate-to-high levels of pain in his hands. He reported experiencing

---

[4] Major depressive disorder and anxiety disorder are also established in other parts of the record. AR 520, 617.

such pain at least half of the time and noted that using tools aggravates the pain. *Id.* Stover also reported having pain in his hip, twice per week for two-to-four hours at a time, as well as left knee pain due to a 1996 bicycle accident. *Id*.

Dr. Kirsch noted that Stover was living with his fiancé and was taking Trazodone and Lexapro and using tobacco regularly. AR 624. Dr. Kirsch conducted a physical examination of Stover's vital signs and conducted a Range of Joint Motion Evaluation and Functional Evaluation Assessment. AR 625-628. Upon a physical examination, Dr. Kirsch concluded that Stover's hand and foot deformity results in a decreased range of motion, strength, and function. He also noted Stover suffers from pain in his left knee and hip, depression and anxiety. AR 625. Upon assessment of Stover's range of joint motions, Dr. Kirsch concluded that Stover can effectively oppose the thumb to the fingertips, sometimes manipulate small objects and effectively grasp tools, like a hammer, half way. AR 628.

    **4.**    **Melinda Heinen, Marital and Family Therapist.**

From November 29, 2010 to January 25, 2011, Stover participated in therapy sessions with Melinda Heinen. AR 675. Heinen is a licensed marriage and family therapist at Caritas Mental Health Clinic in St. Cloud Minnesota. AR 676. On November 29, Heinen conducted a Diagnostic Assessment Summary on Stover. AR 678. According to the Summary, Stover came to therapy "because of problems with 'depression, anxiety, and ADHD,' and feeling 'disconnected.'" *Id.* Heinen noted that Stovers' long-term partner recently left him and returned to Oklahoma with his four-year old son. *Id*. She also noted that Stover was troubled by his unemployment and residence in a homeless shelter.

Stover reported experiencing symptoms of sadness, hopelessness, "anhedonia, excessive guilt, restlessness, loss of interest, difficulty sleeping, difficulty concentrating, irritability, and

loss of appetite" for a two-week duration. AR 678. Stover expressed that he was having suicidal thoughts, but that he would never kill himself because he does not want to hurt his son. AR 678. He also reported feeling "unpleasant physical sensations of numbness [*sic*] feeling hot, difficulty relaxing, dizziness, racing heart, and difficulty breathing" and that "[h]e feels nervous and scared and fears something bad will happen."

Heinen noted that these are significant symptoms of anxiety. Heinen also diagnosed Stover with the following:

- recurrent and moderate-to-severe major depressive disorder;
- generalized anxiety disorder;
- attention deficit disorder; and
- web hands and web feet.

AR 682. Heinen also noted that Stover has social education, financial and housing problems, but is "resourceful and able to find needed community resources," that he has "at least average intelligence," and that "[h]e wants to improve his mental health and relationships." AR 681. In Heinen's assessment, she concluded that Stover's mood is stable and free of suicidal thoughts, that he had "vague symptoms described of mania," and that a major depression diagnosis will be reserved barring her gathering further information. [5]

### B. Stover's Testimony

At the March 2011 hearing before ALJ Meuwissen, Stover testified on his own behalf. He first acknowledged that he had some problems with the law, including a driving while intoxicated citation[6] and a 2004 incident where his brother who pulled a gun on someone in

---

[5] Heinen notes in her January 25, 2011 Progress Note assessment that a major depression diagnosis will be reserved. AR 676. She diagnosed Stover with major depressive disorder in her initial assessment on November 29, 2010.

[6] Stover noted that the citation was for medication he was on, not intoxication from

Stover's presence.[7] AR. 54. Stover spent nine months in Grady County jail for the later incident. He testified that he was sexually assaulted while incarcerated. *Id.*

Stover testified that the last time he had a job was in 2008, when he was working through a temp agency. AR. 55. Stover mostly did construction jobs, but also testified that he has some experience making sales phone calls. AR. 56. Later, Stover worked at a Burger King on the hamburger line. While doing construction and working at Burger King, Stover suffered from episodes of severe back pain.

To cope with his disability, Stover acknowledged that he turned to alcohol and drugs, including cocaine.[8] AR. 60. At the time of the hearing, Stover was admitted to Recovery Plus, an addiction center, to learn healthy coping skills. *Id.* Stover testified that he wanted to get a part-time job, but did not feel that he could work full time because of the pain he suffered throughout his body.[9] AR. 61. Stover noted that it was difficult for him to grasp things or use his hands in repetitive motions and that he also had difficulty balancing. AR 65-66.

### C. Vocational Expert's Testimony

Vocational Expert (VE) Onkin also testified at the March 2011 hearing. ALJ Meuwissen asked VE Onkin to consider a young person with a high school education and no communication difficulties with the following residual capacity (RFC) for light work:

- No use of ropes, ladders, or scaffolds;
- Occasional balancing, stooping, kneeling, crouching and crawling;

---

[7] alcohol. AR. 54.

[8] Stover also acknowledged a series of traffic violation fines. AR. 55.

Stover testified that he used cocaine when he was younger, but was currently struggling with alcohol abuse. He testified that he was 120 days sober at the time of the hearing.

[9] Stover noted arthritis in his left knee and his webbed fingers and toes.

- Some difficulty with gross and fine use of hands (no ability to handle tools with the left hand and some difficulty with the right hand).

AR 71. VE Onkin testified that a person with this RFC would not be able to do construction work, but would be able to do work in food service, a hand package inspector, a counter clerk or a parking/valet attendant. AR 72. VE Onkin testified that 700-1000 of each type of job identified was available in Minnesota. *Id.* With the additional restriction of brief, superficial interaction with coworkers and the public, VE Onkin testified that there were still sufficient jobs available in the national economy for Stover to engage in. For example, VE Onkin identified work such as a surveillance system monitor and food and beverage order clerk. AR 73. In response to questions from Stover's attorney, VE Onkin acknowledged that if a person with a hypothetical RFC capacity presented by the ALJ was off task for 20 percent of the time, gainful employment in the jobs he identified would be impossible. AR 75.

### D.  ALJ Meuwissen's Decision

In July 2011, ALJ Meuwissen concluded that Stover was not disabled under 1614(a)(3)(A) of the Social Security Act. In making this conclusion, Meuwissen went through the five-step sequential evaluation process required by the Social Security Act. At step one, Meuwissen concluded that Stover had not engaged in substantial gainful activity since September 1, 2006. AR 13; 20 CFR 404.1571 and 416.971. At step two, Meuwissen concluded that Stover suffered from the following severe impairments:

- Chronic back pain
- Bilateral hand deformity with history of web hands
- Generalized anxiety disorder
- Major depressive disorder
- Attention deficit hyperactivity disorder
- Posttraumatic stress disorder, and
- Personality disorder

At step three, Meuwissen concluded that Stover did not have an impairment, or combination of impairments, that met or medically equaled a listed impairment in 20 CFR part 404, Subpart P, Appendix 1. AR 13. Meuwissen considered "paragraph B" and "paragraph C" criteria. AR 14. Under the paragraph B criteria, a claimant must suffer from mental impairments that result in marked restriction[10] in at least two of the following: activities of daily living, difficulty maintaining social functioning, maintaining concentration, persistence or pace. AR 14. The final criteria considered are repeated episodes of decompensation, each lasting an extended duration.[11] *Id.* Based on the evidence in the record, Meuwissen concluded that Stover had a moderate restriction in his activities of daily living; moderate difficulty in social functioning and mild difficulty with regard to concentration, persistence or pace. AR 14-16. Meuwissen also concluded that the paragraph C criteria were not established because the evidence did not support a finding of repeated episodes of decompensation, a residual disease process or a history of one or more years' inability to function outside a highly supported living environment.

At step four, Meuwissen concluded that, despite certain limitations, Stover had a residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following restrictions:

- No ropes ladders or scaffolding;
- No more than occasional balancing, stooping, kneeling, crouching and crawling;
- Occasional fine manipulation bilaterally;
- Constant gross handling bilaterally;
- Limited grasping and pinching with the left hand;

---

[10] A marked restriction means more than moderate but less than extreme. AR 14.

[11] Repeated episodes of decomposition means three episodes within one year, or once every four months, each lasting for at least two weeks. AR 14.

- No more than brief superficial contact with coworkers and the public.

In making this RFC finding, Meuwissen considered the relevant statutory criteria and those articulated in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). Based on Stover's RFC, Meuwissen concluded at step five that although Stover was unable to perform his previous work, he was able to secure gainful employment as a surveillance system monitor, a food and beverage order clerk or a gate guard. AR 23.

### III. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is restricted to a determination of whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Qualls v. Apfel*, 158 F.3d 425, 427 (8th Cir. 1998). Substantial evidence means more than a mere scintilla; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 220 (1938). In determining whether evidence is substantial, a court must also consider whatever is in the record that fairly detracts from its weight. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). "As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome . . . or because we would have decided the case differently." *Roberts v. Apfel*, 222 F.3d 466, 468 (8th Cir. 2000). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id.*

## IV. CONCLUSIONS OF LAW

**A. Substantial evidence supports the ALJ's conclusion that Stover's impairments do not meet or medically equal a statutory listing.**

Stover argues that the pain from his webbed hands and feet is equivalent to the criteria for inflammatory arthritis in section 14.09 and that the ALJ erred by not fully developing the medical record in this regard. The Commissioner argues that substantial evidence supports the ALJ's conclusion that Stover's impairments do not meet or medically equal the 14.09 criteria or any other statutory listing. The Court agrees with the Commissioner.

The social security regulations provide that if a claimant suffers from a combination of impairments that do not meet a listing, the Commissioner will compare the claimant's findings with a closely analogous impairment. 20 CFR § 404.1526 (b)(3). "If the findings related to your impairments are at least of equal medical significance to those of a listed impairment, we will find that your combination of impairments is medially equivalent to that listing." *Id.* Stover acknowledges that he can point to no medical source confirming that his impairments are equivalent to the inflammatory arthritis listing, but argues that is only because ALJ Meuwissen failed in his duty to fully develop the record on medical equivalency. ECF No. 13 at 9.

"For a claimant to show that his impairments matches a listing, it must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). The relevant inflammatory arthritis listing, 14.09A, requires the claimant to show persistent inflammation or deformity of one or more major peripheral weight-bearing joints that result in either the "inability to ambulate effectively" or an "inability to perform fine gross movements effectively." 20 CFR, part 404, subpart. P, app. 1 at 14.09(e)(i). Inability to ambulate effectively means that a claimant cannot walk over a sufficient distance to carry out activities of daily living, cannot

11

walk without crutches or a walker, is unable to use public transportation, etc. *Id.* at 14.00(B)(6), citing 1.00(B)(2)(b). An inability to perform fine and gross movements effectively is indicated by an extreme loss of function that interferes seriously with an individual's ability to initiate, sustain, or complete activities independently. *Id.* at 14.00(B)(7), citing 1.00(B)(2)(c).

Here, Stover claims he had difficulty walking and maintaining balance, but no evidence in the record supports the conclusion that he had difficulty walking when carrying out activities of daily living. AR 14. From 2008 through 2011, the medical experts who examined Stover all noted that he was able to walk without difficulty. AR 530, 531, and 625. The record also shows that Stover was able to do some yard work, use public transportation and shop in stores. AR 375-77, 451-53, 785-86. In regard to Stover's ability to perform fine and gross movements, ALJ Muewissen accounted for his limitations due to his hand deformities in the designated residual functional capacity. AR 17 ("occasional fine manipulation bilaterally; constant gross handling bilaterally; limited grasping and pinching with the left hand"). The record evidence supports Muewissen's conclusion that Stover has limitations in the use of his hands, but that those limitations do not result in an inability to complete fine gross movements as required by the inflammatory arthritis listing. *See* AR 18. For example, Stover was able to ride his bike 5-10 miles per day—indicating he was able to grasp the handle bars and brakes effectively—in addition to showering, making his own meals and more. AR 376, 452-53, 550, 593 and 786.

In sum, substantial evidence in the record supports the ALJ's conclusion that Stover's medical impairments are not equivalent to those in Listing 14.09. *Marciniak v. Shalala*, 49 F.3d 1350, 1354 (8th Cir. 1995) (holding that substantial evidence supported the ALJ's conclusion that the claimant's impairments did not equal a listing because there were no medical findings comparable in kind or severity to all of the listed criteria).

**B. The ALJ fully developed the record.**

Stover argues that the ALJ was required to call a medical expert to support his conclusion that Stover's impairments do not medically equal a listed impairment. The Commissioner argues that Stover carried the burden to show medical equivalency and, regardless, that the ALJ properly incorporated findings of medical consultants in his conclusion that Stover's impairments did not meet a statutory listing. The Court agrees with the Commissioner.

First, the Claimant carries the burden to "establish that his . . . impairment [met] or equal[ed] a listing." *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). As discussed *supra*, the Court agrees with the Commissioner that Stover failed to meet this burden. Second, two consultative RFC examinations were conducted during Stover's application process. AR 554-63 and 648-64. Those findings were incorporated and affirmed by other medical consultants and thus incorporated into the ALJ's findings. AR 18, 19 and 671. *See Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010) ("ALJ's consideration of [doctor's] signed RFC assessment satisfied the obligation to receive an expert opinion on equivalence."). The ALJ's opinion in this case makes clear that he determined Stover's RFC in a manner consistent with the record as a whole. For these reasons, the Court concludes that the ALJ properly developed the record. *Henningsen v. Astrue*, No. 11-cv-2693 insert LEXIS #, at *17 (D. Minn. Feb. 13, 2013) ("When a plaintiff has alleged that the ALJ failed to properly develop the record, the proper inquiry is whether the record contained sufficient evidence for fair determination.").[12]

---

[12]    Stover's final argument is that VE Onkin's testimony in response to the ALJ's hypothetical questions does not constitute substantial evidence because the ALJ improperly determined Stover's residual functioning capacity. The Court considers this

## V. CONCLUSION

The Court concludes that substantial evidence supports the ALJ's finding that Stover is capable of performing a limited range of sedentary work. Substantial evidence also supports ALJ Muewissen's conclusion that Stover's impairments are not equivalent to any listing. Finally, ALJ Muewissen fully developed the record and did not err in his determination of Stover's residual functioning capacity.

## VI. RECOMMENDATION

Based upon all the files, record, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion for Summary Judgment (ECF. No. 14) be **GRANTED**.

2. Plaintiff's Motion for Summary Judgment (ECF. No. 11) be **DENIED**.

DATED: December 6, 2013                             *s/Franklin L. Noel*
                                                                                   FRANKLIN L. NOEL
                                                                                    United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before December 23, 2013, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.

---

    argument moot in light of its conclusion that the ALJ did not err in determining Stover's RFC.